795 F.2d 52
 55 USLW 2046, 33 Ed. Law Rep. 169
 MARK and Ruth A., as parents and next friends of Alleah A.,
a minor child, Appellants,
v.
GRANT WOOD AREA EDUCATION AGENCY, an Iowa School
Corporation; Iowa City Community School District, an Iowa
School Corporation; and Robert D. Benton, in his official
capacity as Iowa State Superintendent of Public Instruction,
Appellees.
 No. 85-2357 SI.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 14, 1986.
Decided July 3, 1986.
 
 Carroll L. Lucht, Iowa City, Iowa, for appellants.
 Matthew G. Novak, Cedar Rapids, Iowa, for appellees.
 Before GIBSON and FAGG, Circuit Judges, and SWYGERT, Senior Circuit Judge.*
 SWYGERT, Senior Circuit Judge.
 
 
 1
 Alleah A. was born on September 13, 1980. She suffers from alternating esotropia (crossed eyes), nystogmes (oscillation of the eyeballs), microcephaly (abnormal smallness of the head), and athetoid cerebral palsy. Her developmental age is one-half of her chronological age.
 
 
 2
 In October 1981 Alleah began attending Handicare, Inc., a private nonprofit daycare center for children from infancy through age six. Handicare's educational program is designed to foster interaction between handicapped and nonhandicapped children. In the same month Alleah was referred to the Grant Wood Area Education Agency's Early Childhood Program ("Grant Wood"). After administering numerous tests, the Grant Wood Program, in February 1982, agreed to place Alleah at Handicare. Such placement recommendations are reviewed annually and Alleah's placement in Handicare was reevaluated in June 1983. At that time Grant Wood recommended placement in a preschool development class at Horace Mann Elementary School in Iowa City, Iowa. Horace Mann is a regular elementary school in the Iowa City Community School District. The Grant Wood staff concluded that:
 
 
 3
 Specific program needs were identified in all developmental areas. Alleah will require occupational and physical therapy, assistance with the developmental, self-skills, particularly eating and dressing, effective methods of communication, development of cognitive skills, all within an environment that is structured to facilitate the teaching of these skills. It was agreed that it will be particularly important to make use of all sensory modalities when working with Alleah, particularly the use of her tactile skills. Adaptation of some instructional materials will be required and appropriate positioning will be important in facilitating learning.
 
 
 4
 Alleah's parents objected to the new placement. They believe that Alleah's present placement at Handicare is the more appropriate educational placement because of its strong commitment to serving both handicapped and nonhandicapped children in an integrated setting. An administrative hearing was held on May 15, 1984 before a hearing officer appointed by the Iowa Department of Public Instruction. On August 1, 1984 the hearing officer affirmed the Grant Wood placement decision. On September 4, 1984 Alleah's parents filed suit in the United States District Court for the Southern District of Iowa. The case was submitted on a stipulated record. On October 25, 1985 the district court upheld the decision of the hearing officer. The sole issue raised by this appeal is whether the decision to place Alleah in a public educational program serving only handicapped children, rather than in a private program serving both handicapped and nonhandicapped children, violates the Education for All Handicapped Children Act ("the Act"). 20 U.S.C. Secs. 1401 et seq.**
 
 
 5
 The Act provides federal money to assist state and local agencies in educating handicapped children, but conditions funding upon a state's compliance with certain guidelines and procedures. To qualify for federal financial assistance, a state must demonstrate that it has in effect a policy that assures all handicapped children the right to a "free appropriate public education." 20 U.S.C. Sec. 1412(1). This education must be tailored to the unique needs of the handicapped child by means of an individualized educational program. Section 1401(18). This program must be reviewed annually. Section 1414(a)(5). For the purposes of this appeal, the most important provision of the Act requires that states, "to the maximum extent appropriate," must educate handicapped children with children who are not handicapped. Section 1412(5). This requirement is known as "mainstreaming." In the federal regulations implementing the Act the mainstreaming requirement is referred to as the "least restrictive environment." 34 C.F.R. Secs. 300.550-300.556. It is this aspect of the Act that Alleah's parents allege has been violated by Alleah's placement in a public educational program serving only handicapped children.
 
 
 6
 In Springdale School District # 50 v. Grace, 693 F.2d 41, 43 (8th Cir.1982), this court emphasized the importance of the Act's mainstreaming provisions. In Springdale a state education department had recommended the placement of a prelingually deaf child in a local public school and had ordered the provision of supplemental services. The local public school district had objected to being forced to bear the costs of those supplemental services. The school district argued that the Act required only that the child be placed in the State School for the Deaf. This court rejected this challenge to the state's placement recommendation. "The cost to the school or the judgment of local authorities do not justify the intervention of this Court to place [the child] elsewhere when the mainstreaming provisions of the Act and the judgment of the State's administrative decisionmakers support a finding that the Springdale School can provide a 'free appropriate public education' consistent with the Act." Id. (emphasis added).
 
 
 7
 In Springdale we recognized that the Act creates a clear preference for public educational placement when that placement is not inconsistent with the mainstreaming provisions of the Act. We reject the view that the mainstreaming provisions of the Act are satisfied only if a handicapped child is educated in the same classroom with nonhandicapped children. Id. Alleah, at the very least, will be educated in the same school with nonhandicapped children. The Supreme Court in Hendrick Hudson District Board of Education v. Rowley, 458 U.S. 176, 202, 102 S.Ct. 3034, 3048-49, 73 L.Ed.2d 690 (1982), emphasized that mainstreaming must be effectuated only to the "maximum extent appropriate." Although Handicare may indeed offer the best educational opportunities for Alleah, "the Act does not require states to make available the best possible option." Springdale, 693 F.2d at 43. "[O]nce a court determines that the requirements of the Act have been met, questions of methodology are for resolution by the States." Rowley, 458 U.S. at 208, 102 S.Ct. at 3052.
 
 
 8
 It should be noted that Iowa does not currently provide integrated public preschool education programs. While the Act mandates that handicapped children receive, to the extent possible, an appropriate public integrated education, it does not compel the state to establish entire new levels of public education services to satisfy the Act's mainstreaming requirements.
 
 
 9
 Of course, Alleah's parents may continue to send her to Handicare at their expense, but nothing in the Education for All Handicapped Children Act mandates that the state assume the costs of that education. We are unwilling to disturb the judgment of Iowa's educational authorities that Alleah may receive a free and appropriate public education at a public elementary school.
 
 The decision of the district court is
 
 10
 Affirmed.
 
 
 
 *
 The HONORABLE LUTHER M. SWYGERT, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation
 
 
 **
 We decline to address Grant Wood's jurisdictional arguments